Whenever you're ready, Ms. Epps. Good morning. I'm still trying, I'm Mr. Smith here. I'd like to start out with the question of whether or not there was a waiver or forfeiture of the arguments. Ms. Epps, can you all hear me okay? I'm sorry. I have a cold in the nose, so here, let me explain how I got the case. I did not represent Mr. Smith at trial. I got hired shortly after or around the time that the government appealed the case, and so I did not know what . . . all I had to look at was the motion for a new trial and the order denying the motion for a new trial did not have any transcripts of the case, so I really did not know what issues might be available on a cross-appeal. Rule 29 says that the defendant may appeal the denial of a motion for a new trial. So I filed the cross-appeal out of an abundance of caution. Once I got the transcript and was able to look at what issues were actually raised and before the court, I realized that the issues were going to involve primarily argument by the prosecutor, which was going to be a cumulative error argument and one that was mostly based on plain error because there were no objections to the arguments at trial, so that unless there's been a final judgment, you can't appeal those particular issues. So once I got the transcript, I knew that I was going to be appealing cumulative plain error for the most part, so that's why I deliberately did not raise those issues on the first appeal because they weren't, almost none of them were decided in the motion for a new trial. So I don't think there was any jurisdiction in the court to hear it until the judgment became final, but that was my rationale. Now, as for the—what I was trying to do in the first appeal was it was unclear to me, Judge Acock, in talking about the weight of the evidence, said that she was denying the motion for a new trial because she was granting the judgment of acquittal. So it was unclear to me whether or not she was denying the part about the weight of the evidence because she had granted the judgment of acquittal. In other words, was she denying it on the merits or was she denying it because she had granted the judgment of acquittal? And so the only person who would know the answer to that would have been Judge Acock. And so what I was trying to avoid in the first appeal was one of those remand orders that said, remanded for reinstatement of judgment and sentencing, where she would not then be able to consider the weight of the evidence argument if that's what she had in fact intended. So that was what I was doing with the first appeal. And if I did that wrong and waived his rights, then that would, I think, mean that I was ineffective because I misunderstood the law. But to get to the merits of the issues that were actually raised on the second appeal, the first one is the issue involving the references to Smith's failure to testify. The government called attention to the fact that the other two people who occupied the apartment and who could have accessed the pornography testified at trial and denied that they were the ones that had done it. So on the first appeal, this court found that Judge Acock had erred in granting the judgment of acquittal because the jurors could have believed those two witnesses and therefore a J&OV was inappropriate. Well, the issue in this case, as the court found in that opinion, was really whether or not the jurors believed those witnesses when they said they didn't do it. Now, there's a problem that comes in there, which is that the basis for the argument that said she didn't do it was a prior inconsistent statement, which she never adopted the truth of so that she never actually testified that she didn't do it. So not only is that argument a reference to Smith's failure to testify and deny it, as the government admits in its brief, it was an improper argument because the record doesn't support it. Now, the government argues that it was not really arguing Smith's failure to testify, but I think the context of the argument makes it pretty clear that the government was. When you talk about the other two people testifying and unequivocally denying it and ask the jury to convict on that basis, where Smith is the only other person who could have denied it, it's pretty clearly, in my mind and in the case law, pretty much holds that that is a reference to the defendant's failure to testify. Now, the other things that happened, there are numerous references to, and I think one of the most egregious errors that the prosecutor made in argument is arguing that the roommate and the girlfriend were truthful when they denied it. The government says that they weren't really arguing that they were truthful, the government was arguing something else, but I don't think that argument is very—when you say the witnesses are truthful, you are vouching for the credibility of the witnesses, and that's a pretty serious error in a case where credibility is the only question. Did they argue that they were truthful, or did they just simply say they were unequivocal? No, they said, and here are the quotes, Ms. Pennix testified it was not her. She is against child pornography. I'm totally convinced that's truthful. She finds it abhorrent, and it is not her. Now, like I said, in truth, she did not testify that it was not her, but the government nevertheless argued it. Now, you get to Mr. Jolly, and he said, why is Mr. Jolly worthy of your belief? Mr. Jolly listened carefully to questions and testified truthfully to what happened, and as you saw from Mr. Barton's cross-examination, he was doing his best to remember and tell the truth. Then he went on to say Mr. Jolly testified unequivocally, truthfully, and corroborated by Ms. Pennix. When he wasn't working, he wasn't there, and on the 20th, now, this is another argument that is not supported by the record, and on the 20th, when she got home on the 29th, she says James was home alone, corresponding to exactly to what Mr. Jolly was testifying to. Again, that's a reference to her prior inconsistent statement. She testified at trial that they were at the parents' house, and she never adopted her prior inconsistent statement, the truth of the prior inconsistent statement. She admitted she made a prior inconsistent statement, but she denied that it was truthful. Then the prosecutor goes on and says, you've got to decide, and I think as you look at his testimony, you can understand that when he testified, he didn't know anything about peer-to-peer networks and Frostwire, that he's telling the truth. And there are many, many cases that hold that. It's one thing to say that I believe the evidence has shown his guilt. It's another thing to show, to testify that he, that the witnesses are telling the truth. Then, to compound the problem, he went on to say, and this was in the context of the parents' alibi, the people testifying about the alibi, he went on to say, what incentive is there to come in and try a person if he's not the person that did the offense? And that was pretty clearly a reference asking the jury to contrast the motives of the Smith family and Smith's girlfriend to lie, whereas the government had no reason to make this up. Now, the case I think that is probably closest to this one is the Gracia case, which I've cited in my brief, and so I won't dwell on that unless somebody has some questions about it, but I think in this case, it was probably even more egregious than it was in Gracia. Now, the other major problem, I think, is the business about the alibi witnesses, where the prosecution questions them about why they didn't go to the authorities earlier. And their authority for doing that are a couple of cases. One of them is Lorry, United States v. Lorry, which is a case from this court, and United States v. Johns, where the court said that it may have some relevance to the truth of Now, I actually question the premise of that. I've been practicing for 42 years, primarily criminal law, and I do not know of a single case where an alibi witness, out of the clear blue, hopped up and went to the police and said, I have an alibi for this person. The way you find out somebody has an alibi is your client mostly knows whether he's got an alibi or not. So the client comes in and says, I have an alibi. The attorney goes and interviews the witnesses, determines whether or not the guy's got an alibi, and mostly tells the witnesses that they have no duty to talk to the police. And the prosecution gets notice of the alibi once they get ready to go to trial, and that's how that works. It's inconvenient. I mean, who would go? I mean, you might if you were that man in the Johns case who had close law enforcement ties, but, I mean, no black person would go wandering into a police station and say, I have an alibi for somebody. No person of any ethnic origin probably would, and certainly nobody who had any outstanding tickets or warrants, which would, you know, by the time you get that in the state of Mississippi, there aren't a whole lot of people left. And why would you—it's just inconceivable to me that somebody—the only reason you would do that is if you didn't know the defendant and you had, you know, learned about this from the newspaper that there was a crime and you knew that you had some sort of alibi. So I don't even understand why it's even—it's a little bit hard for me to get to the part where that would be even relevant. But— Thank you, Ms. F. Sheehan. Five minutes on rebuttal. Mr. Roberts. As to the waiver issue, Your Honors, the Notice of Appeal—Cross-Appeal, page 562 of the record—states, Notice is hereby given that James William Smith, in the above style and numbered cause, hereby appeals—cross-appeals to the United States Court of Appeals for the Fifth Circuit for the order denying his motion for a new trial. And in honor about November 26, 2012, and from all related orders and judgments entered prior or subsequently, it's inconceivable that that's not what was being appealed on the cross-appeal. The denial— But he was not required—he raised—I was surprised, frankly, that there wasn't more law on this, but I couldn't find any that says you're required to raise everything that you possibly could, and if you don't, you've waived or forfeited plain error in a subsequent appeal. Well, the question becomes, regardless of whether or not you have to, the fact that it is raised, and then there's a representation made in the earlier appeal that the Court didn't actually— Well, I can see why you would argue that everything he raised in the motion for a new trial is law of the case, but I don't see how you can say issues that were not part of the motion for a new trial are foreclosed on subsequent appeal. Issues in the motion for a new trial that was filed address all the issues— But you're not required to file a motion for a new trial as a predicate to raising plain error issues on appeal. I understand that you're not required to, although I don't understand why not. I mean, to me, the denial of a motion for a new trial is an order. Well, but that's not the criminal law, and you know that. They can raise all kinds of issues on plain error review, even if they never filed a motion for a new trial, or if they did and they weren't included in the motion. It's not foreclosed. Well, it's not foreclosed, but, Your Honor, when it's raised, how then can they— If it's raised, if it was in the motion for a new trial, I see your argument. If it was not in the motion for a new trial, I didn't see a case, and I read what you said. You're obviously not required to bring all issues forward. Right. You concentrate or hone in on the ones that you believe are most advantageous to you. In this case, then there is a representation made in the Court of Appeals that the judge didn't order what she ordered. There's a representation made based on page—I think it's midway through—the order where it says, because the grant of a judgment of acquittal is appropriate, a motion for a new trial is not required, which is ambiguous. But in the last paragraphs of that order, it states the motion for a new trial is denied. There is nothing in the court and nothing in the trial of the case that requires it. We'll spot you there. We'll spot you there. And then the Court of Appeals, in the final paragraph of the original opinion, says we've reviewed the motion for a new trial and the objections to it, and we find it's not well taken. So it's ruled on. So where the motion for a new trial is—there is a cross-appeal. There is a failure to bring forth any of those issues. Those issues are waived. That's the case of the Court. I couldn't find a case that said that. What's your best case that says that? It's on point. I don't know that I have a case on point. Because I don't know that there—I don't know that it comes up in a situation like this. I don't know that it's come up in a situation like this. Mr. Smith prevailed in the trial court. He got a judgment of acquittal. He did. He's not required, I don't think. I couldn't find a case that said he's required on the first appeal to bring up everything that would entitle him to a new trial, in the event the Court of Appeals disagrees and sends it back. Had there been no issue raised, had there been no cross-appeal, I think that you're correct. The problem is, once you raise and do the cross-appeal and then fail to raise the issues in your cross-appeal, I think you've waived it. Again, I can—you didn't cite a case. I can't find one. And I'll be frank. I don't know that there's a case on these exact facts, and so I didn't cite a case because I don't think there is a case. It's such a rare, anomalous situation that I'm not sure there is a case on this. It just seems odd that the government loses and then they require the defendant to raise on a cross-appeal every issue that could possibly entitle him to a new trial. Well, Your Honor, I think—again, and I guess I'll go back to this. I don't think they're required to, but once they do, I think that becomes— That's not true because defendants file motions for a new trial all the time. They're denied, and then they come up here and raise on plain error review for the first time issues, and we routinely review them. We don't say, well, that should have been in your motion for a new trial. It's foreclosed. No case says that. But what Your Honor did in the prior opinion was actually address those issues that— Those issues. We didn't address issues that he didn't raise. Well, I don't read the opinion in saying that. I think the opinion says that you considered all of the issues. All the issues he raised. We didn't consider issues he didn't raise. Well, I think—and Your Honor, because there was a cross-appeal, the government's position is that those issues that—where notice of cross-appeal is given, going to appeal the motion for a new trial, the denial of that motion, that in those cases she's waived those arguments by not bringing them forward in that case—in the prior case. And then the Court ruled on the—pardon me—Court ruled on the motion for a new trial and denied it based on the issues that are raised in considering the record, I assume, as a whole and made the finding in the final paragraph of the earlier opinion. So I think the issues are waived. If not, the law of the case has been determined by a prior panel. So I guess that's where we're at. I don't have a case on point. I'll admit that. As to the other issues, Your Honor, I don't think there was—first off, I quoted at length the closing argument, because I think that it shows you a better context than maybe one or two points that are brought out and highlighted from— You weren't trial counselor. I was. I tried the case. I did the prior appeal. I've done all—this is my case. What were you thinking? I was arguing to the jury, Your Honor. You know better than that. You cannot say to a jury, I wouldn't have prosecuted unless this person was guilty. Well, I didn't say that. Well, you said, what incentive is there to come in and try a person if he's not the person that did the offense? Now, what is that saying? That is in a response to them not coming forward, the witnesses not coming forward with the alibis. That's vouching for the government saying, we're not going to try somebody that's not guilty. Your Honor, in the context, it's—they were— There's no context to it. That's impermissible, period. That's never appropriate. Your Honor, in this case, the wife came and met with the investigators and got the computers back. The mother called and made a—and attacked the investigator. There was constant contact prior to the indictment of the case. There was constant contact through the case trying—and if you read the record, you can see how vigorous Mr. Barton attacked the government in the case and attacked the case. And we went through and met with him several times. We went through all that. And so the argument was, this is never brought out, the 20th, which was known on the date of her statement. What has that got to do with the government saying, we would never try a person that's not guilty? Your Honor, it's not we would never try that. It's—they didn't bring this alibi evidence. That's their conduct. You said, what incentive is there to come in and try a person if he's not the person that did the offense? That's a standalone vouching for the government. That's not in response to them failing to raise an alibi. Well, it was made in response to them failing to raise the alibi, Your Honor. That's the context of it. In more than three or four different times, you said that his girlfriend and Jolly were truthful. Yeah. Your Honor, as you look at that and— I have looked at it. I know. I know, Your Honor. And again, that's why I quoted lengthy portions of the argument. If this weren't a closed case, you know, I'd be standing here saying, don't you ever do this again. But this was a closed case as between Smith and Jolly. Your Honor, and the argument was—and here's—Pennex testified it was not her. Now, that is an improper argument. You said, I'm totally convinced that that's truthful regarding Ms. Pennex. And that's as to her abhorrence of child pornography. I'm not—if you look at the facts of the case, she came in and testified that— And you're saying, therefore, she's not the one that downloaded it. She's truthfully—I'm convinced that that's truthful. Your Honor, it was— You're vouching for her credibility. No, I was saying that she's against child pornography. You're saying what she said was true, then? As to being against child pornography. And that's the reason she wouldn't have downloaded it. Well, Your Honor— Let's get to Mr. Smith. Let's spot you, Ms. Pennex. There's not much evidence that she did have an alibi, I think. She did. She was at work. Let's look at—what did you say about Mr. Smith? More than once, you said he testified truthfully. Mr. Jolly, Your Honor. I'm sorry, Mr. Jolly. What I said was, Mr. Jolly testified it's not him unequivocally. This is page 2,894 of the record. Mr. Jolly listened carefully to the questions and testified truthfully to what happened. That's once. Second time. Jolly testified unequivocally, truthfully, and corroborated by Ms. Pennex. Your Honor, let me—this is what I— He's telling you the truth. Three times. He testified it's not him unequivocally. Talk about Mr. Jolly in a few minutes, but I think— He said truthfully as well. I probably did, Your Honor. Well, that's what it says in the transcript. Is the transcript wrong? No. I said, I'll try and suggest to you a number of reasons why I believe that he is worthy of believing. I went through more of the evidence. Now, you've heard the testimony before, pardon me. In your evaluation, you're going to have to decide some things.  Unfortunately, in this case, you're going to have to make some judgments. Judgment calls about some witnesses. That's 2897 of the record. Now, let's talk about Mr. Jolly for a minute. You saw him testify. Why is he worthy of your belief? Well, Mr. Jolly is doing the employment Mr. Jolly is capable of doing. I hope I'm saying that. I don't mean to insult him in any way. He listened carefully and testified truthfully to what happened. As you saw from Mr. Barton's cross-examination, he was doing his best to remember and tell the truth. Because when Mr. Barton said, when you unloaded this from the computer, and Mr. Jolly said to him, you said unloaded. I don't know what unloaded from a computer means. And then in the closing minutes, you have to decide for me. You have to decide. This is 2903 of the record. It's not for me to say Mr. Jolly is worthy of your belief. It's for you to decide. But I suggest to you, as you look at the facts, that he is, because it is corroborated by other facts of the case. As you look at the evidence, this is 2904, and consider it in light of your common sense, your life experience, your use of computers, and families. As you look at that evidence, all those Facebook logins and logouts that correspond to the IP address where that stuff was purposefully pasted. And then talked about, and here's 2904, the question that you talked about. Mr. Mozingo again, it's not there by accident. Some cat didn't come by and tape on the keyboard and get those files there. Didn't happen like that. One of these three people, Ms. Penix couldn't have done it. She was at work. Mr. Jolly testified it wasn't his computer. He didn't know how. He didn't know peer-to-peer. Unequivocal denials. Uncontradicted denials. Of the three, the person that put that computer, the material on the computer, purposely was the defendant, James Williams, James William Smith. That's what common sense and evidence tells you. And then the closing part, and that's what we honor and I ask you to do. Look at the evidence, evaluate it as you do so. You'll find the defendant's in fact guilty and should be . . . The defendant is in fact guilty and should be held accountable. And in Gracia and the Cottner case out of the Seventh Circuit, they talk about repeated time. As you look at the context of the entire argument, it is . . . He got flushed the line several times. He crossed it three times. Yeah. I agree with Judge Owen. I mean, I went back and looked at this because I have to say, we don't usually see a lawyer for the government do something like that. Very unusual. That's worth looking at. And Judge Owen is right. And not only that, but I think you know that. Because I can tell from your argument today, you're trying to do your best to defend the judgment. And a good deal of the work that you did here as the prosecutor was fine. But you went over the line several times, and you just might as well fess up and move on, okay? If the Court finds that way, then I apologize to the Court. I understand from looking at it. And what was this business about drafting, that you were talking about your personal experience drafting and . . . I was a lousy drafter in high school. It was just a personal reference. You were trying to vouch for Jolly, it seems like, through that, saying, well, I . . . I think it's just a passing comment about the fact that he was doing the work that he was capable of doing, Your Honor. I'm not trying to be desultory to a diesel mechanic. But he . . . And as you look at . . . In fact, it's not in the record. The defendant's statement at the time that he was arrested, which was not introduced at trial, said it wasn't Jolly. He couldn't do it. He couldn't have done this. That is the jury . . . That is what the jury saw of Mr. Jolly. He was not . . . He was not capable of putting peer-to-peer software on a computer. I'm just asking you about . . . You're talking about your own experience, parallel to your witness's experience. It was, Your Honor, a passing remark that I was incompetent in high school as an in-drafting class. And that's what I was trying to do. I was just trying to say that. It was nothing vouching for him. I was just saying he is doing what he is capable of doing, job-wise. Assuming that you did cross the line regarding Jolly, how does that affect the harmful error analysis? Well, it would be plain error because it's not been raised . . . It was not raised at trial, I don't believe. Your Honor, it's been a way because there was a denial of the motion for a new trial, which the cross . . . We can argue about that. I'm not going to re-argue those cases. It was a jury decision. There were denials from Mr. Jolly. There was . . . Ms. Pennix was incapable, was at work, so couldn't have done it. Mr. Mozingo, the computer expert, testified of one of the three persons. I think the jury was . . . The case authority is pretty vigorous on this, that it's not harmless error if, as Gracia states, if, as Cottnam states in the footnote in Gracia, repeated violations. And I don't think that this constitutes repeated violations. I would say it would be harmless error. We didn't . . . I don't know if there are other issues. That seems to be the main issue that the Court's concerned about, obviously. So if there are other questions about other facts of the case, I'm happy to try and answer them. If not, I'll see you at the time. Thank you, Your Honor. Thank you, sir. Ms. Epps, you have five minutes on rebuttal. I'm so glad somebody else was not able to find a lot on that. I did find . . . I happened to be . . . One reason why I got off onto that whole business about raising the ambiguity about the weight of the evidence issue was that I happened to be working on another case at the same time where the judge had granted a new trial on remand, and there was an issue about the mandate and the law of the case. And so I had . . . I did run across one footnote in that Kellington case that I cited, which deals with Rule 29. It's footnote 14, and it points out that Rule 29, which is the authority for appealing the denial of a motion for a new trial when there's been a judgment of acquittal, says that the defendant may appeal it. It doesn't say that he shall appeal it, and so they are saying that it's permissive. I knew once I got the transcript that I was going to have to raise all of this in the context of cumulative error, and for the most part, cumulative plain error. And the problem came in also with the motion for a new trial itself and the ruling on the issue involving the references to the failure to testify. There was only one of those that was objected to, and it was raised in the motion for a new trial, but Judge Acock did not specifically rule on that. So that made it unclear whether the motion for a new trial had been denied on that basis and whether or not Rule 29 permitted me to appeal that because it had not been denied. And then, as for other things that were actually objected to, the motion for a new trial only says, the court erred in not overruling defendant James Smith's objection to specific questions asked by the government, which that's on page one of the motion for a new trial, which again made it ambiguous as to whether or not there had been an actual denial of those things. So the purpose of raising everything in one appeal or the first appeal would be for judicial economy, and judicial economy was never going to be served in this case by me raising all of this stuff on the first appeal because I couldn't raise it because it hadn't been denied. And so it just didn't make any sense to raise it twice when I knew I was going to have to come back if the court said that Judge Acock overruled, erred in overruling the, I mean, in granting the JNIV. So it just didn't make any sense to me to do it that way. And it seemed that Rule 29 was in any event permissive and that's what that Kellington footnote seemed to indicate, which was about the only thing I could find on it either. So that's why I did it that way. I think the court pretty much has the rest of my argument unless there are any questions that I need to address, I'll sit down and shut up.